OPINION OF THE COURT
Charles E. Ramos, J.
This holdover proceeding is based upon the respondent’s continued occupancy of the subject premises despite the expiration of the last renewal agreement of the lease on September 30, 1982 and the termination of the respondent’s month-to-month tenancy pursuant to a 30-day notice of termination effective March 31, 1985.
Counsel for the parties have stipulated that the petitioner’s motion for entry of a default judgment would be converted to a motion for summary judgment.
The sole question that this court must answer is whether or not the respondent has a defense to this holdover action.
The respondent was a rent-stabilized tenant living in the subject premises when it underwent a cooperative conversion pursuant to a plan dated June 27, 1980. Respondent was *393 offered the shares of stock allocated to his apartment at the then insider price, but elected not to purchase said shares pursuant to a senior citizen exemption. This exemption, available pursuant to General Business Law § 352-eeee, as then in effect, provided that a senior citizen, 62 years or older, living in an apartment in which the combined annual income of all tenants of said apartment was less than $50,000 for the income tax year immediately preceding the filing of the offering plan, could elect not to purchase said shares while remaining in the apartment as a rent-stabilized tenant. The sponsor of the plan challenged the respondent’s eligibility for the senior citizen exemption and eventually the Attorney-General determined that the respondent was in fact not eligible within the meaning of General Business Law § 352-eeee because the combined annual income of all tenants of said apartment was in excess of $50,000 for the income tax year preceding the year in which the plan was accepted for filing.
The respondent asserts that at the time of making the election not to purchase his then attorney advised him that any monetary limitation set forth in General Business Law § 352-eeee referred not to gross income but to net income. Respondent states that his election not to purchase was based on this advice. This may be true, but in no way could respondent’s reliance on his attorney’s advice serve as a defense to the present holdover action. Furthermore, an examination of the respondent’s Federal income tax return for 1979, as well as the respondent’s New York State tax return for the same year, leads this court to conclude that it would be difficult for the respondent to have formed a good-faith belief that the combined income from all sources of all tenants in the subject apartment was less than $50,000.
The respondent brings to this court’s attention the fact that the sponsor of the plan challenged the respondent’s eligibility for the senior citizen exemption and that because of that challenge, protracted litigation between the sponsor and the Attorney-General ensued in which the sponsor sought to compel the Attorney-General, through a CPLR article 78 proceeding, to make such determinations as to senior citizen exemption eligibility. Several years later the Attorney-General stipulated to an order in the Supreme Court, County of Albany, which required the Attorney-General to conduct hearings as to respondent’s eligibility for the senior citizen exemption. These hearings resulted in a finding that the respondent was not eligible for such exemption.
*394 It is the respondent’s contention that he was prejudiced by the Attorney-General’s delay in making the determination of his ineligibility. The respondent repeatedly refers to the Attorney-General’s "obligation” under applicable law to determine eligibility challenges within 30 days. The prejudice caused to the respondent by the Attorney-General’s delay in making the determination of eligibility is substantial. At the time the Attorney-General should have determined the respondent’s eligibility he could have purchased his apartment for $108,-882. The price to the respondent has been increased dramatically, his most recent opportunity to purchase was at a price of $300,000. Of course, the respondent put himself at risk by filing an election not to purchase as an eligible senior citizen under circumstance that, notwithstanding his protestations to the contrary, was not filed in any good-faith expectation of being sustained. Had the vicissitudes of the real estate market not gone against him, the respondent’s gamble might have succeeded.
The respondent also places a good deal of emphasis on the language contained in the form for election not to purchase as a senior citizen. Specifically, the respondent refers to that language stating that "I [tenant] understand that this election does not preclude me from subsequently becoming a purchaser of the apartment pursuant to Section 352-eeee of the General Business Law”. This language is construed by the respondent to mean that he retained the right to purchase his apartment at the original insider price. This is clearly not what the election form says. Reference to the applicable General Business Law § 352-eeee in effect when the conversion plan was accepted, states (in reference to senior citizen exemptions) at subdivision (1) (e) "provided that such election shall not preclude any such tenant from subsequently becoming a purchaser.” The absence of any language pertaining to such tenant subsequently purchasing at the original insider price is quite conspicuous. Thus it is apparent that the respondent’s interpretation of the rights retained by him in reference to his becoming a subsequent purchaser is not borne out by the language of the election form or the General Business Law incorporated by it.
The rights of the respondent as to his becoming a purchaser subsequent to a determination of his ineligibility for the senior citizen exemption are clearly delineated in the Supreme Court order of Justice Cholakis. This order, which set forth the criteria which apply to the process of determining *395 the challenges to certain senior citizen exemptions, states: "26. Notwithstanding the provisions of paragraph '25’ of this Order, 56th Plaza shall extend to such Ineligible Electing Tenant an exclusive option to purchase (under the form of the Purchase Agreement annexed hereto as Exhibit '25’), within forty-five days from the date of the Determination (time being of the essence), the shares of Plaza 400 Owners Corp. allocated to the Apartment, if occupied by the Ineligible Electing Tenant, at 56th Plaza’s then current offering price; provided, however, such exclusive option shall not be construed to impair 56th Plaza’s right to sell such shares, subject to the option.” (Emphasis added.) Thus, despite the respondent’s assertions to the contrary, the order of Justice Cholakis provides for purchase within 45 days of determination of respondent’s ineligibility at the offering price in effect when that determination was made.
Apparently, the respondent chose to take no action as to purchasing the shares of stock allocated to his apartment. The respondent also failed to bring an article 78 proceeding challenging the amendment of the plan to reflect the terms of the Supreme Court order. Nor did respondent commence an article 78 proceeding to challenge the Attorney-General’s determination that respondent was not an eligible senior citizen as defined by General Business Law former § 352-eeee.
It is with this background as context that the present holdover proceeding comes before this court. Though this court may sympathize with the respondent due to the situation he now finds himself in, no defense exists to this holdover action. The respondent cannot turn the clock back in time so that he could proceed in a more prudent and diligent fashion. It is a combination of respondent’s erroneous assertion that he was eligible as a senior citizen under General Business Law former § 352-eeee and a course of conduct that could only be described as inaction that has placed him in his present predicament.
Accordingly, the petitioner’s motion for summary judgment is granted.